**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| IN RE ALLSTATE FAIR CREDIT | ) | MDL Docket No. |
| REPORTING ACT LITIGATION | ) | 3:02-md-1457 |
| | ) | |
| THIS PLEADING REFERS TO: | ) | Complaint – Class Action |
| | ) | |
| Enriquez v. Allstate  3:02-698 | ) | |
| Cochran v. Allstate  3:02-700 | ) | |
| Rose v. Allstate       3:03-969 | ) | |
| Carlson v. Allstate   3:03-483 | ) | |

## SIXTH AMENDED COMPLAINT

Plaintiffs Teresita Enriquez, Jeanne Cochran, Carl Funderburk, Patty A. Funderburk, Garnell Whitfield, Cassietta Whitfield, Timothy Carlson, Nancy Rose, and Jeffrey Leamon bring this action, individually and on behalf of the classes of persons defined below, against Defendants, Allstate Insurance Company and Allstate Indemnity Company, pursuant to their investigations, upon knowledge as to themselves and their own acts, and otherwise upon information and belief.[1]

### THE PARTIES, JURISDICTION, AND VENUE

1.      Defendants, Allstate Insurance Company ("Allstate Insurance") and Allstate Indemnity Company ("Allstate Indemnity") (hereinafter collectively referred to as "Allstate"), are both Delaware corporations with their principal places of business in Illinois.

2.      Allstate Insurance Company is a wholly owned subsidiary of the Allstate Corporation, a Delaware company.   Allstate Indemnity Company is a wholly owned subsidiary of Allstate

---

[1] The Fifth Amended Complaint contained allegations separated into two parts. Part One, involving the FCRA claims of Woodrow Shelton, Jr., Larry Daniels, Sr., Sandra Daniels, Cynthia Silhol, Marsh D. Myers, Ronald Kevin Myers, and Michael Sanchez, were resolved by Final Judgment dated July 29, 2005. Part Two, involving the claims of Teresita Enriquez, Jeanne Cochran, Geoffrey Cochran, Timothy Carlson, and Nancy Rose, were not resolved by settlement. This Sixth Amended Complaint sets forth the allegations in Part Two of the Fifth Amended Complaint as a separate complaint, and adds the claims of new Plaintiff Jeffrey Leamon. The Sixth Amended Complaint does not include claims by former Plaintiff Geoffrey Cochran.

Insurance Company. The Allstate defendants are headquartered in Northbrook, Illinois. The Allstate defendants write insurance in 49 states, including Tennessee, Georgia, Florida, and the District of Columbia. Allstate sells both automobile and homeowners' insurance policies (hereinafter "insurance policies").

3. The Allstate defendants utilize standard application forms and procedures which were created by Allstate Insurance Company and which are used by the nationwide sales force of Allstate Insurance Company as directed from the home office of Allstate Insurance Company in Illinois.

4. Defendants have agents and other representatives throughout the country, including in the state of Tennessee, and in Sumner and Davidson counties specifically.

5. Both Allstate Insurance and Allstate Indemnity are authorized to do and are doing business in the State of Tennessee.

6. Plaintiff Teresita Enriquez is a resident of Florida.

7. Plaintiff Jeanne Cochran is a resident of Georgia.

8. Plaintiffs Carl and Patty Funderburk, Garnell Whitfield and Cassietta Whitfield are residents of New York.

9. Plaintiff Timothy Carlson is a resident of Texas.

10. Plaintiff Nancy Rose is a resident of Louisiana.

11. Plaintiff Jeffrey Leamon is a resident of Florida.

12. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. Section 1331, and venue is proper in the Middle District of Tennessee pursuant to stipulation of Plaintiffs and Defendants.

2

## THE FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681, et seq.

13.     This is a class action seeking damages from Allstate Insurance and Allstate Indemnity for increasing premium charges for insurance coverage, offering other than the lowest premium available, and requiring payment of premium charges in a lump sum, rather than by installments, all based in whole or in part on information in consumer reports without making certain disclosures to applicants who never were issued a policy, and for obtaining the consumer reports of non-applicants without a permissible purpose, in connection with applications for insurance by others who were never issued a policy, all in violation of the Fair Credit Reporting Act, 15 U.S.C.§§ 1681 - 1681t ("FCRA").

14.     The Fair Credit Reporting Act, 15 U.S.C. §§ 1681 - 1681t, is a federal statute first enacted in 1971. The FCRA is a consumer protection statute that regulates the activities of consumer reporting agencies and users of consumer reports, and provides certain rights to consumers affected by use of their consumer reports. As a consumer protection statute, the provisions of the FCRA are to be liberally construed in favor of the consumer.

15.     In 1996, the FCRA was further amended to expand the rights of consumers who are adversely affected by use of their consumer reports.

16.     The FCRA provides that consumer reporting agencies may provide consumer reports to persons who intend to use the information in connection with insurance transactions, including underwriting of insurance policies,  involving a consumer. 15 U.S.C. § 1681b(a)(3)©).

17.     The term "consumer report" means any written, oral, or other communication of *any information* by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a

factor in establishing the consumer's eligibility for credit or insurance to be used primarily for personal, family, or household purposes. Consumer reports include credit reports, driving records and prior claims reports. 15 U.S.C. § 1681a(d).

18.     The FCRA provides that if the user of a consumer report takes any adverse action with respect to a consumer based in whole or in part on any information contained in the consumer report, the user of the report must provide notice to the consumer of the adverse action, together with the identity of the consumer reporting agency providing the credit report and other specific information. 15 U.S.C. § 1681m.

19.     "Adverse action" is defined in the FCRA as: "a denial or cancellation of, an increase in any charge for, or a reduction or other adverse or unfavorable change in the terms of coverage or amount of, any insurance, existing or **applied for**, in connection with the underwriting of insurance." 15 U.S.C. § 1681a(k)(1)(B)(I) (emphasis added).

20.     The FCRA adverse notice provisions are meant to provide consumers warning that their consumer reports have been used adversely to their interests, in order to provide such consumers with an opportunity to review the information contained in the consumer report and determine whether mistakes in their credit reports might have contributed to such adverse action. Where adverse notice is not provided, the consumer is left without this important legislative protection from errors in such reports. The FCRA notice provisions are meant to govern any application, whether or not any insurance policy is ultimately issued in connection with that application.

21.     Congress explicitly limits the reasons for which entities can obtain a copy of a consumer report. The FCRA mandates that the permissible purposes for furnishing reports in connection with insurance transactions not initiated by the consumer are only if the consumer authorizes the agency to provide the report or the transaction consists of a firm offer of credit or

insurance to the consumer.  15 U.S.C. §1681b. A permissible purpose exists to obtain a consumer report only for the applicant of an insurance policy, and not for other persons, including others in the same household of the applicant.

22.     The FCRA provides for civil remedies to consumers for violations of the Act, including damages, punitive damages, costs and attorneys fees. 15 U.S.C. § 1681n.

23.     The FCRA also provides that any person who knowingly and willfully obtains information about a consumer from a consumer reporting agency under false pretenses shall be fined under title 18, United States Code, imprisoned for not more than 2 years, or both.  15 U.S.C. § 1681q.

**JEANNE COCHRAN**

24.     On or about August 6, 2001, Jeanne Cochran applied to Allstate for a homeowner's insurance policy.

25.     Jeanne Cochran was the sole applicant for the homeowner's insurance policy.

26.     As part of the application, Jeanne Cochran provided Allstate with her address.

27.     Allstate's agent requested and Ms. Cochran provided the names and social security numbers for Ms. Cochran's adult children who resided in Ms. Cochran's home.  Ms. Cochran provided Allstate with the social security number of Geoffrey Cochran, her adult son.

28.     Allstate obtained a consumer report for Geoffrey Cochran from a consumer reporting agency.

29.     Allstate used information from Geoffrey Cochran's consumer report to determine the terms on which Allstate would offer an insurance policy to Jeanne Cochran.

30.     Based in whole or in part on the information contained in Geoffrey Cochran's consumer report, Allstate denied Jeanne Cochran's application for homeowner's insurance and refused to offer her a policy.

31.     Allstate never requested permission from Geoffrey Cochran to obtain a consumer report containing information about him.

32.     Allstate never requested permission from Jeanne Cochran to obtain a consumer report containing information about Geoffrey Cochran.

33.     Allstate never received permission from Geoffrey Cochran to obtain a consumer report containing information about him.  Allstate did not have a permissible purpose under the FCRA to obtain Geoffrey Cochran's consumer report.  15 U.S.C. § 1681b.

34.     Neither Allstate nor any Allstate agent or employee ever provided to Jeanne Cochran or to Geoffrey Cochran the notice and disclosure required by the FCRA, including:

(a)     notice that the adverse action was taken;

(b)     the name, address, and telephone number of the consumer reporting agency making the consumer report on Geoffrey Cochran or Jeanne Cochran;

©)     a statement that the consumer reporting agency did not make the decision to take the adverse action and was unable to provide Jeanne Cochran or Geoffrey  the specific reasons why the adverse action was taken;

(d)     notice of Jeanne Cochran's or Geoffrey Cochran's right to obtain a free copy of a consumer report on them from the consumer reporting agency, indicating the 60-day period for obtaining such a copy; and

6

(e)　　　notice of Jeanne Cochran or Geoffrey Cochran's right to dispute with the consumer reporting agency the accuracy or completeness of any information in the consumer report furnished by the agency.

## CARL AND PATTY FUNDERBURK, AND GARNELL AND CASSIETTA WHITFIELD

35.　　In March, 2005, Plaintiff Carl Funderburk asked an Allstate agent for a quotation for homeowner's insurance with Allstate. In 2002, Plaintiff Garnell Whitfield likewise asked an Allstate agent for a quotation for homeowner's insurance with Allstate.

36.　　Allstate obtained a consumer report on both Carl Funderburk and Patty Funderburk. and on both Garnell Whitfield and Cassietta Whitfield, reported a premium amount to Mr. Funderburk, who found the quoted premium to be excessive and elected to obtain a policy from another insurer.

37.　　Allstate offered Mr. Funderburk a policy with a premium on terms that were less than the best available terms offered by Allstate.

38.　　Allstate chose the terms it offered to Mr. Funderburk based in whole or in part on information contained in the consumer report of Carl Funderburk or Patty Funderburk

39.　　Allstate never received permission from Patty Funderburk or Cassietta Whitfield to obtain their consumer information, and did not have a permissible purpose in obtaining such information.

40.　　Allstate never provided an adverse action notice to either Carl Funderburk or Patty Funderburk, or to either Garnell Whitfield or Cassietta Whitfield.

## TERESITA ENRIQUEZ, TIMOTHY CARLSON, NANCY ROSE, AND JEFFREY LEAMON

41.     In October, 2001, Plaintiff Teresita Enriquez purchased a new Ford automobile and visited Allstate Insurance Company's offices in Sarasota, Florida, where she applied for automobile insurance with Allstate Insurance Company.

42.     After obtaining information from Ms. Enriquez, Allstate Insurance Company electronically obtained a consumer report on Ms. Enriquez and, used the consumer information to underwrite her application for automobile insurance.

43.     Based in whole or in part on Ms. Enriquez's consumer report information, Allstate determined that Ms. Enriquez did not qualify for Allstate Insurance Company's lowest insurance premium, and also determined that Ms. Enriquez would be required to pay the first six months of premiums "up front," rather than in installments.

44.     Allstate informed  Ms. Enriquez that to obtain an automobile insurance policy, she would have to pay Allstate Insurance Company the full $781 for the first six month automobile insurance policy.

45.     Further, Ms. Enriquez was offered a policy issued by Allstate Indemnity Company, based upon her credit score and underwriting information.

46.     Allstate Insurance Company's underwriting procedures uniformly used credit report information in determining whether applicants would be required to pay the total premiums for the initial term of the policy, as opposed to being allowed to pay in installments. These procedures were uniformly engaged in by the electronic underwriting system of Allstate Insurance Company, rather than through individual decisions by human underwriters.

47.     These uniform electronic underwriting procedures are used by Allstate Insurance Company throughout the United States.

48. By requiring Ms. Enriquez to pay all of her premiums "up front," based in whole or in part upon information in a consumer report, Allstate took adverse action against Ms. Enriquez as defined in the FCRA.

49. Ms. Enriquez could not afford to pay her premiums in such a lump sum fashion, and declined coverage with Allstate. She was able to obtain insurance from another source, and was allowed to pay on a monthly basis.

50. Neither Allstate nor any Allstate agent or employee ever provided to Ms. Enriquez, the notice and disclosure required by the FCRA, including:

(a) notice that the adverse action was taken;

(b) the name, address, and telephone number of the consumer reporting agency making the consumer report on Ms. Enriquez;

(©) a statement that the consumer reporting agency did not make the decision to take the adverse action and was unable to provide Ms. Enriquez the specific reasons why the adverse action was taken;

(d) notice of Ms. Enriquez's right to obtain a free copy of a consumer report on them from the consumer reporting agency, indicating the 60-day period for obtaining such a copy; and

(e) notice of Ms. Enriquez's right to dispute with the consumer reporting agency the accuracy or completeness of any information in the claims report furnished by the agency.

51. Upon information and belief, it is alleged that defendants do not as a matter of practice and procedure provide any notice to property and/or casualty insurance applicants or insureds that

9

the information obtained from a consumer report has been used in determining eligibility for installment or periodic payment of premiums.

52.     Plaintiffs Carlson and Rose each had made application for an Allstate policy or renewal of policy, and were adversely affected by information in their respective consumer reports, and each alleges that he or she received no adverse action notice. The allegations of paragraphs 43 and 44 are realleged herein.

53.     Plaintiff Jeffrey Leamon, a resident at the time of Deerfield Beach, Florida, applied for renter's insurance from Allstate in August, 2003.

54.     Plaintiff Leamon was told that the quote he received for such insurance had been substantially increased due to information Allstate had received regarding his "financial stability."

55.     Plaintiff Leamon received no adverse action notice from the defendants.

## CLASS ACTION ALLEGATIONS

56.     Plaintiffs bring this action pursuant to Rule 23, Fed. R. Civ. P. individually and on behalf of other persons similarly situated.  Plaintiffs Jeanne Cochran, Teresita Enriquez, Timothy Carlson, Nancy Rose, and Jeffrey Leamon seek to represent the following class of consumers hereinafter referred to as "Class C":

> Residents of the United States of America who on or after January 1, 1994, were charged increased rates or other sub-optimal terms for insurance by Allstate Insurance Company or Allstate Indemnity Company, based in whole or in part on information in consumer reports, and who were never subsequently issued an insurance policy, without adequate disclosures being provided to them as required by the Fair Credit Reporting Act.

To be excluded from Class C are persons employed by or otherwise related to Allstate Indemnity Company, Allstate Insurance Company, their successors, or affiliates.

57.     Plaintiff Patty Funderburk and Cassietta Whitfield  bring this action pursuant to Rule

23, Fed. R. Civ. P. individually and on behalf of other persons similarly situated. Plaintiff Patty

Funderburk and Cassietta Whitfield seek to represent the following class of consumers hereinafter

referred to as "Class D":

> Residents of the United States of America who on or after January 1,
> 1994, had their credit reports obtained by Allstate Insurance Company
> and Allstate Indemnity Company in connection with the application of
> another person for an insurance policy, and for whom Allstate
> Insurance Company and Allstate Indemnity Company had no
> permissible purpose to obtain such credit report as required by the
> Fair Credit Reporting Act.

To be excluded from Class D are persons employed by or otherwise related to Allstate Indemnity

Company, Allstate Insurance Company, their successors, or affiliates.

58.     Plaintiffs Jeanne Cochran, Teresita Enriquez, Timothy Carlson, Nancy Rose, and

Jeffrey Leamon each were subjected to adverse action due to information contained in consumer

reports, based on an application for insurance each made to Allstate, and who did not receive the

notice required by law whenever any type of adverse action is taken..   Plaintiff Patty Funderburk is

a person whose credit report was obtained by Allstate based on the application for insurance made

by Carl Funderburk.

59.     Plaintiffs Jeanne Cochran, Teresita Enriquez, Timothy Carlson, Nancy Rose, and

Jeffrey Leamon on behalf of Class C bring the claims asserted in Counts VII, IX, and XI of this

complaint.

60.     Plaintiff Patty Funderburk and Cassietta Whitfield on behalf of Class D brings the

claims asserted in Counts VIII, X, and XII of this complaint.

### RULE 23(A) ALLEGATIONS

61.     Pursuant to Rule 23(a), this action may be maintained as a class action because all

procedural elements are satisfied, as set forth below:

### 1. NUMEROSITY

62.     Allstate is one of the largest insurers in the United States.  The number of consumers with respect to whom Allstate took an adverse action under the FCRA and failed to provide the information and notices required under the FCRA is in excess of one million.  The exact number and identity of the members of Class C is unknown to Plaintiffs but can easily be determined from Allstate's records.

63.     The number of consumers for whom Allstate obtained consumer reports with no permissible purpose and in violation of the FCRA currently is unknown to plaintiffs, but plaintiffs believe that the proposed class is in the thousands of thousands.  The exact number and identity of the members of Class D can easily be determined from Allstate's records.

64.     The members of Class C and Class D are so numerous that it would be impractical to join all of the members of each Class within the meaning of Rule 23(a)(1).

### 2. COMMONALITY

65.     On behalf of Class C, the representative Plaintiffs bring claims which raise questions of law and fact common to all members of Class C, as contemplated by Rule 23(a)(2).  Common issues include:

> (a)     Whether Allstate violated the FCRA when Allstate took adverse actions against applicants for insurance based in whole or in part on information contained in consumer reports, failed to properly advise the applicants that adverse actions had been taken against them, and failed to properly provide the applicants with the information and notices required under the FCRA;

> (b)     Whether Allstate violated the FCRA when Allstate took adverse actions against applicants for insurance based in whole or in part on information

contained in consumer reports without providing the notices required under the FCRA;

(©)    Whether Allstate's actions in failing to provide adequate notice as required by the FCRA were willful;

(d)    Whether Allstate's actions in failing to provide adequate notice as required by the FCRA were done in reckless disregard of the consumers' rights;

(e)    Whether Allstate's actions in failing to provide adequate notice as required by the FCRA was a willful violation of the FCRA;

(f)    Whether Allstate's actions in failing to provide adequate notice as required by the FCRA was a negligent violation of the FCRA; and

(g)    Whether members of Class C are entitled to an award of statutory damages under the FCRA.

66.    On behalf of Class D, the representative Plaintiff, Patty Funderburk brings claims which raise questions of law and fact common to all members of Class D, as contemplated by Rule 23(a)(2). Common issues include:

(a)    Whether Allstate engages in a practice of obtaining consumer reports during the course of underwriting insurance applications relating to people other than the applicant;

(b)    Whether Allstate's practice of obtaining such consumer reports violates the FCRA;

(©)    Whether Allstate acted without a permissible purpose in connection with its practice of obtaining consumer reports relating to people other than the applicant;

13

(d)     Whether Allstate willfully violates the strictures of the FCRA by obtaining

consumer reports without a permissible purpose;

(e)     Whether Allstate obtained consumer reports for individuals other than the

applicants using false pretenses within the meaning of the FCRA;

(f)     Whether Plaintiff and members of Class D are entitled to recover statutory

damages under the FCRA.

### 3. TYPICALITY

67.     In accordance with the requirements of Rule 23(a)(3), the representative Plaintiffs'

claims are typical of the claims of all other members of each Class, and the representative Plaintiffs

have no interests which are adverse or antagonistic to the interests of the members of the Classes.

The representative Plaintiffs' claims are typical of the claims of the members of Class C because all

such claims arise from a series of identical business practices, or a common course of conduct,

involving Allstate's failure to notify consumers that adverse actions had been taken against them and

Allstate's failure to provide other required information to consumers, in violation of the FCRA.

68.     Patty Funderburk's claims are typical of the claims of the members of Class D because

all such claims arise from a series of identical business practices, or a common course of conduct,

involving Allstate obtaining consumer reports during the course of underwriting insurance

applications relating to people other than the applicant, which is an impermissible purpose and

violates the FCRA.

### 4. ADEQUACY

69.     In accordance with the requirements of Rule 23(a)(4), the representative Plaintiffs and

their counsel will fairly and adequately represent and protect the interests of each member of  Class

C and Class D.  The representative Plaintiffs and the Classes share common interests, and the

representative Plaintiffs are committed to the vigorous prosecution of this action and have retained competent counsel experienced in class action litigation.

## RULE 23(B)(3) ALLEGATIONS

70. Questions of law and fact common to the Class Members clearly predominate over any questions affecting only individual members.

71. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Most individual Class members have little ability to prosecute an individual action due to the complexity of the issues involved in this litigation, the significant costs attendant to litigation on this scale, and the comparatively small, although significant, damages suffered by individual Class members. Absent a class action, Class members will continue to suffer damages. Allstate's violations of federal law will proceed without remedy while Allstate continues to retain the proceeds of its higher premium insurance rates.

72. This action will result in an orderly and expeditious administration of Class claims. Economies of time, effort, and expense will be fostered and uniformity of decisions will be insured.

73. This action presents no difficulty that would impede its management by the Court as a class action. When the liability of Allstate has been adjudicated, the damages of each class member can be administratively determined. A class action is superior to other available methods for the fair and efficient adjudication of each class member's claim.

## COUNT I

### WILLFUL NONCOMPLIANCE WITH FCRA
### AS TO CLASS C

74. Plaintiffs repeat and re-allege the allegations set forth above as if fully set forth herein.

75. Allstate willfully fails to comply with the notice requirements for users of consumer reports imposed under the FCRA. Allstate's adopted corporate policy and Allstate's actual practice

15

and procedure is to not advise consumers of a denial or cancellation of, or increase in any charge for, insurance when such adverse action is based in whole or in part on the information contained in a prior claims experience report, a motor vehicle department driving record report, or a credit history report.

76.     Allstate's adopted corporate policy and Allstate's actual practice and procedure is to not provide consumers with the notices and other information required under the FCRA in the event of a denial or cancellation of, or increase in any charge for, insurance when such adverse action is based in whole or in part on the information contained in a consumer report.

77.     Allstate's adoption of its policy and Allstate's practice and procedure of failing to notify consumers that an adverse action has been taken against them, and failing to provide consumers with notice of the consumers' rights and other information required by the FCRA, is in reckless disregard of the consumers' rights.

78.     Allstate's adoption of its policy and Allstate's practice and procedure of failing to notify consumers that an adverse action has been taken against them, and failing to provide consumers with notice of the consumers' rights and other information required by the FCRA, is in conscious disregard of the consumers' rights.

79.     Each Plaintiff and each member of the Class has sustained damages as a result of Allstate's failure to comply with the FCRA.  Each Plaintiff and each member of the Class is also entitled under Section 617 of the FCRA to damages of not less than $100 and not more than $1,000. Each Plaintiff and each member of the Class is also entitled to attorneys' fees as provided in the FCRA.

## COUNT II

## WILLFUL NONCOMPLIANCE WITH FCRA
## AS TO CLASS D

80.     Plaintiffs repeat and re-allege the allegations set forth above as if fully set forth herein.

81.     Allstate willfully violates the FCRA by obtaining consumer reports in connection with the underwriting of insurance policy applications relating to people other than the applicant.

82.     Allstate's adopted corporate policy and Allstate's actual practice and procedure is to obtain consumer reports on individuals other than the applicant during the underwriting of an application for insurance. This policy and practice is not supported by a permissible purpose and violates the FCRA.

83.     Allstate's policy, practice and procedure of obtaining consumer reports in connection with the underwriting of insurance policy applications relating to people other than the applicant is in reckless disregard of the consumers' rights.

84.     Allstate's policy, practice and procedure of obtaining consumer reports during the course of underwriting insurance applications relating to people other than the applicant is in conscious disregard of the consumers' rights.

85.     Patty Funderburk, Cassietta Whitfield and each member of Class D has sustained damages as a result of Allstate's failure to comply with the FCRA. Patty Funderburk and each member of Class D is also entitled under Section 617 of the FCRA to damages of not less than $100 and not more than $1,000. Each Plaintiff and each member of the Class is also entitled to attorneys' fees as provided in the FCRA.

17

**COUNT III**

**NEGLIGENT NONCOMPLIANCE WITH FCRA**
**AS TO CLASS C**

86.     Plaintiffs repeat and re-allege the allegations set forth above as if fully set forth herein.

87.     Allstate negligently fails to comply with the notice requirements for users of consumer reports imposed under the FCRA. Allstate fails to advise consumers of a denial or cancellation of, or increase in any charge for, insurance based in whole or in part on information contained in consumer reports as defined by the FCRA. Allstate negligently fails to provide consumers with the notices and other information required under the FCRA in the event of a denial or cancellation of, or increase in any charge for, insurance, based in whole or in part on the information contained in a consumer report.

88.     Allstate's conduct wrongfully violates the notice provisions for users of consumer reports under the FCRA.

89.     Each Plaintiff and each member of Class C has sustained damages as a result of Allstate's failure to comply with the FCRA, in that Class members have uniformly lost the opportunity to obtain free of charge copies of their credit reports used adversely against them, pursuant to the FCRA, 15 U.S.C. § 1681j(b).

**COUNT IV**

**NEGLIGENT NONCOMPLIANCE WITH FCRA**
**AS TO CLASS D**

90.     Plaintiffs repeat and re-allege the allegations set forth above as if fully set forth herein.

91.     Allstate negligently fails to comply with the FCRA by obtaining consumer reports in connection with the underwriting of insurance policy applications relating to people other than the applicant.

18

92.     Allstate's conduct wrongfully violates the notice provisions and permissible purpose provisions for users of consumer reports under the FCRA.

93.     Each Plaintiff and each member of Class D has sustained damages as a result of Allstate's failure to comply with the FCRA.

## COUNT V

## INJUNCTIVE AND DECLARATORY RELIEF AS TO CLASS C

94.     Plaintiffs re-allege and incorporate herein the allegations set forth above as if fully set forth herein.

95.     Allstate continues to violate the rights of its applicants and customers in failing to provide notice of adverse action under the FCRA, and if not enjoined from such violations by the Court, Allstate will continue to engage in conduct which disregards the rights of consumers.

96.     Unless Allstate is ordered to provide to Plaintiffs the adverse notice required by the FCRA, Plaintiffs will continue to suffer irreparable injury for which there is no adequate remedy at law.

97.     Upon information and belief, the acts complained of herein were done by Allstate as part of a pattern and practice of failing to provide the required FCRA adverse action notice to persons whose consumer information have been obtained and used in whole or in part to underwrite the consumers' applications for insurance.

98.     Upon information and belief, Allstate maintains no procedures designed to insure that the required FCRA notices will be provided to the members of Class C, or such procedures which are maintained are inadequate to insure that the required notifications will be provided.

99.     Regarding those members of Class C who have already had adverse action taken on their insurance premiums or applications, unless Allstate is ordered to provide to them the required

written notifications, they will continue to suffer irreparable injury for which there is no adequate remedy at law.

## COUNT VI

## INJUNCTIVE AND DECLARATORY RELIEF AS TO CLASS D

100.    Plaintiffs re-allege and incorporate herein the foregoing allegations.

101.    Allstate continues to violate the rights of consumers by obtaining consumer reports on them in connection with the underwriting of an insurance policy application submitted by another person, and if not enjoined from such violations by the Court, Allstate will continue to engage in conduct which disregards the rights of consumers.

102.    Unless Allstate is ordered to cease and desist obtaining consumer reports on consumers in connection with the underwriting of an insurance application by another person, the consumers will continue to suffer irreparable injury for which there is no adequate remedy at law.

103.    Upon information and belief, the acts complained of herein were done by Allstate as part of a pattern and practice of obtaining consumer reports for impermissible purposes under the FCRA and under false pretenses.

104.    Upon information and belief, Allstate maintains no procedures designed to insure that consumer reports are not obtained for impermissible purposes or under false pretenses.

105.    Regarding those members of Class D who have already had their consumer reports obtained for impermissible purposes and/or under false pretenses, unless Allstate is ordered to discontinue this practice, they will continue to suffer irreparable injury for which there is no adequate remedy at law.

# PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, demand judgment against Allstate Indemnity and Allstate Insurance as follows:

(a)     Certify this action as a class action and designate Plaintiffs as the representatives thereof;

(b)     Award each Plaintiff and member of each Class either (I) the actual damages sustained by such Plaintiff or member of each Class as a result of Allstate's willful failure to comply with the FCRA, or (ii) damages of not less than $100 and not more than $1,000;

©)     Award each Plaintiff and member of each Class the actual damages sustained by them as a result of Allstate's negligent failure to comply with the FCRA;

(d)     Award Plaintiffs and the members of each Class reasonable attorneys' fees, prejudgment interest, and the costs and expenses incurred in this action, including experts' fees; and

(e)     Grant such other relief as may be appropriate under the circumstances.

# TRIAL BY JURY

All Plaintiffs demand a trial by jury of all issues so triable in this action.

Respectfully submitted,

For the Plaintiffs,

JAMES, HOYER, NEWCOMER & SMILJANICH, P.A.


**By: s/Terry A. Smiljanich**
Terry A. Smiljanich
4830 W. Kennedy Boulevard
Suite 550
Tampa, FL 33609
Telephone (813) 286-4100
Facsimile   (813) 286-4174
tsmiljanich@jameshoyer.com

Kenneth S. Canfield
DOFFERMYRE SHIELDS CANFIELD
KNOWLES & DEVINE
1355 Peachtree Street, N.E.
The Peachtree, Suite 1600
Atlanta, GA 30309
Telephone: (404) 881-8900
kcanfield@dsckd.com

McCALLUM LAW FIRM, LLC
Charles A. McCallum, III
2062 Columbiana Road
Vestavia Hills, AL 35216
Telephone: (205) 824-7767
cmccallum@mccallumlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing Sixth Amended Complaint has been served via e-mail, this 19th day of October, 2006, upon:

Andrew B. Campbell
Wyatt Tarrant & Combs
2525 West End Avenue
Suite 1500
Nashville, TN 37203
acampbell@wayttfirm.com

Jeffrey P. Lennard
Sonnenschein Nath & Rosenthal
8000 Sears Tower
Chicago, IL 60606
jlennard@sonnenschein.com

Douglas Bowdoin
Beusee, Brownlee, Bowdoin & Wolter
390 N. Orange Avenue, Suite 2500
Orlando, FL 32801
dbowdoin@bowdoinlaw.com

R. Scott Jackson, Jr.
Howell & Jackson, PLLC
144 Second Avenue, North
Suite 450
Nashville, TN 37201
rsjackson@nowelljackson.com

Gordon Ball
Ball & Scott
Bank of America Center, Suite 750
550 Main Avenue
Knoxville, TN 37902
gball@ballandscott.com

A. Thomas Stubbs
Law Office of A. Thomas Stubbs
Commerce Plaza Suite 720
755 Commerce Drive
Decatur, GA 30030
stubbs@trialattorney.com

Ron Parry
Parry, Deering, Futscher & Parks, PLC
128 E. Second Street
P.O. Box 2618
Covington, KY 41012-2618
rparry@pdfslaw.com

David A. Szwak,
Bodenheimer, Jones,Szwak & Winchell,LLP,
401 Market Street, Suite 240
Shreveport, LA 71101
bjks1507@aol.com

Rene Oliveira
Roerig, Oliveira & Fisher, LLP
855 West Price Road, Suite 9
Brownsville, TX 78520
roliveira@rosllp.com

Benigno "Trey" Martinez
Martinez, Barrera & Martinez, LLP
1201 East Van Buren
Brownsville, TX 78520
nancy@martinezybarrera.com

Natalie Finkelman Bennett
Shepherd, Finkelman, Miller & Shah
35 E. State Street
Media, PA 19063
nfinkelman@classactioncounsel.com

Howard Finkelstein
FINKELSTEIN & KRINSK
501 W. Broadway, Suite 1250
San Diego, CA 92101
hdf@class-action-law.com

Earl P. Underwood, Jr.
21 South Section Street
PO Box 969
Fairhope, Alabama 36533
epunderwood@alalaw.com

Suzanne M. Schwarz
Law Offices of Suzanne Schwarz, PC P.O.
Box 532044
Harlingen, TX 78553
schwarzlawfirm@aol.com

**s/Terry A. Smiljanich**
Terry A. Smiljanich